UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIDPRIME, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-478-RP |
| | § | |
| SMARTPROCURE, INC., d/b/a *SmartProcure*, | § | |
| JEFFREY RUBENSTEIN, and | § | |
| MARC DIGERONIMO, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff BidPrime, LLC's ("BidPrime") Motion for Entry of a Temporary Restraining Order and to Set a Hearing on Plaintiff's Motion for a Preliminary Injunction, (Dkt. 3), and the parties' responsive briefing. On June 12, 2018, the parties participated in a hearing on BidPrime's motion. After considering the motion, the supporting evidence, and the relevant law, the Court finds that the motion should be denied.

## I. BACKGROUND

BidPrime is a Texas company that uses its proprietary software to monitor and aggregate real-time requests for proposals, bids, and contracts issued by public and private entities in the United States and Canada. (Compl., Dkt. 1, at ¶¶ 12–13). BidPrime's service is designed to reduce the amount of time that its customers would need to spend searching for bids themselves. (*Id.* ¶¶ 13–14). BidPrime developed the software that it uses to monitor, collect, and store information about bid requests. (*Id.* ¶ 17). BidPrime also developed the software that customers use to search and view information about the bid requests that the company monitors and collects. (*Id.*). BidPrime operates a closed website that allows registered users to view the bid requests that the company collects. (*Id.* ¶¶ 14–16).

1

Defendant SmartProcure, Inc., d/b/a GovSpend ("SmartProcure") is "one of BidPrime's largest competitors." (*Id.* ¶ 23). Defendant Jeffrey Rubenstein ("Rubenstein") is SmartProcure's President, CEO, and founder; Defendant Marc DiGeronimo ("DiGeronimo") is SmartProcure's Director of Sales. (*Id.* ¶¶ 4–5). According to BidPrime, SmartProcure offered to buy unlimited access to BidPrime's website and proprietary database in 2017. (Schwartzbeck Decl., Pl.'s Ex. A, Dkt. 4-1, ¶ 18). During negotiations, Rubenstein signed up for a free trial to access BidPrime.com, which ended when negotiations stalled in November 2017. (*Id.* ¶¶ 19–22).

Several months later, Rubenstein and DiGeronimo accessed BidPrime's website on a number of occasions through the accounts of two SmartProcure customers and an account registered to a fake identity created by DiGeronimo. (Rubenstein Decl., Defs.' Ex. A, Dkt. 11-3, ¶¶ 14–20). When accessing BidPrime's website, Defendants both manually and automatically—using software called "bots"—obtained large quantities of bid data. (*Id.* ¶ 15; Schwartzbeck Decl., Pl.'s Ex. A, Dkt. 4-1, ¶¶ 29–42). Altogether, BidPrime estimates that Defendants obtained data related to 52,175 bid requests. (Schwartzbeck Decl., Pl.'s Ex. A, Dkt. 4-1, ¶ 43).

On the basis of these allegations, BidPrime asserts causes of action against Defendants for (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (2) violations of the Stored Communications Act, 18 U.S.C. §§ 2701, 2707 ("SCA"); (3) violations of the Texas Harmful Access by Computer Act, Tex. Civ. Prac. & Rem. Code §§ 143.001 *et seq.* ("THACA"); (4) violations of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et seq.* ("TUTSA"); (5) common law misappropriation of trade secret information; (6) violations of the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code §§ 134.001 *et seq.*; (7) conversion; (8) trespass to chattels; (9) breach of contract; (10) unjust enrichment; and (11) civil conspiracy. (*Id.* at 18–30).

On the same day it filed its complaint, BidPrime filed this motion for a temporary restraining order ("TRO"), in which it asks the Court to enjoin Defendants from accessing BidPrime's website

without authorization, using information contained on BidPrime's website, or deleting information from SmartProcure's computers that might be evidence relevant to this action. (Mot. TRO, Dkt. 3, at 2–4). BidPrime only bases its request for a TRO on its CFAA, THACA, breach of contract, and misappropriation of trade secrets claims. (Mem. Supp. Mot. TRO, Dkt. 4, at 16).

## II. LEGAL STANDARD

The party moving for a TRO must establish that: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the [TRO] will not disserve the public interest." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987). "A [TRO] is an extraordinary remedy and should only be granted if the plaintiffs have clearly carried the burden of persuasion on all four requirements." *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008) (citation and quotation marks). Upon reviewing BidPrime's motion, the Court concludes that BidPrime has failed to demonstrate (1) a substantial likelihood that it will prevail on the merits of its trade secrets claims, or (2) that irreparable harm will likely result if an injunction is not granted on the basis of BidPrime's CFAA, THACA, or breach of contract claims.

## III. DISCUSSION

*A. Misappropriation of Trade Secrets*

BidPrime argues that the Court should enter a TRO on the basis of its trade secret misappropriation claims. (Mem. Supp. Mot. TRO, Dkt. 4, at 24–27). The Court finds that a TRO is not warranted on the basis of these claims because BidPrime has failed to show a substantial likelihood of success on the merits of these claims at this stage in the litigation.

To establish trade secret misappropriation in Texas, a plaintiff must show "(a) the existence of a trade secret; (b) a breach of a confidential relationship or improper discovery of the trade secret;

3

(c) use of the trade secret; and (d) damages." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 583 (5th Cir. 2013). Although public information cannot be a trade secret, a combination of public information can, in certain circumstances, be a trade secret. *Id.* However, to qualify as a trade secret, the owner of that combination of information must take "reasonable measures under the circumstances to keep the information secret." Tex. Civ. Prac. & Rem. Code § 134A.002.

BidPrime argues that its trade secrets are its website, its real-time aggregated bid requests, and its unique database of bids. (Mem. Supp. Mot. TRO, Dkt. 4, at 25). BidPrime argues that it has taken reasonable efforts to keep this information secret because (1) its website is only accessible to registered users, who are (2) only given access to a limited amount of data. (*Id.*). As evidence, BidPrime points to terms of service (the "New Terms") that prohibit users from using more than 10 percent of BidPrime's bid database, accessing the site to build or improve a competitive service, or copying any website data without prior written consent. (*Id.* at 8).

After the hearing, BidPrime submitted supplemental evidence that these New Terms were published on May 19, 2018. (Hetzel Decl., Dkt. 19-1, ¶ 7). Until that time, BidPrime's services were subject to terms of service that took effect in November 2017 (the "Old Terms"). (Nov. 2017 Terms of Service, Defs.' Ex. R-1, Dkt. 16-1, at 4–5). And because the Old Terms provide for 30-day notice of modifications, they will not apply to existing users who registered accounts before May 19, 2018, until June 19, 2018. (*Id.* at 4).

The Old Terms contained none of the limitations present in the New Terms. (*Id.* at 4–5). Under the Old Terms, the only limitation on the use of BidPrime's data is contained in a clause that reads, "any government bids, awards, general data, product theft, or idea theft occurring from the company or user in violation may result in legal action for damages." (*Id.* at 5).

At the hearing, BidPrime agreed that it would not violate the Old Terms for a customer to have copied data describing every bid in BidPrime's database and published it for free on a different website. Bids published on BidPrime's website before May 19, 2018, were therefore not subject to use restrictions that would prohibit a user from making BidPrime's unique aggregation of bids public information. Indeed, existing users who registered their accounts before May 19, 2018, are still not prohibited from making that information public. Given these factual findings, the Court cannot conclude that BidPrime took sufficiently reasonable measures to keep its aggregated bid data secret for such information to constitute a trade secret under Texas law. The Court therefore finds that BidPrime has not demonstrated a substantial likelihood of success on the merits with respect to its trade secret claims at this stage in the litigation. Having made that finding, the Court need not address whether BidPrime met its burden with respect to the remaining TRO requirements as to its trade secret claims.

### B. CFAA, THACA, and Breach of Contract

BidPrime also asks the Court to issue a TRO on the basis of its CFAA, THACA, and breach of contract claims. (Mem. Supp. Mot. TRO, Dkt. 4, at 17–24). The Court finds that a TRO is not warranted on the basis of these claims because BidPrime has failed to show a substantial threat that it will suffer irreparable harm if a TRO is not granted.

To meet its burden to show irreparable harm, a movant must show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). Additionally, the plaintiff must show that the irreparable injury will occur "during the pendency of the litigation" without the TRO. *Justin Inds., Inc. v. Choctaw Secs., L.P.*, 920 F.2d 262, 268 n.7 (5th Cir. 1990). An irreparable injury is one that "cannot be undone by monetary damages or one for which monetary damages would be especially difficult to calculate." *Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 335 (5th Cir. 2013) (citations and quotation marks omitted).

5

BidPrime argues that it has had to shift resources away from core business activities to conduct security audits and create new security systems. (Mem. Supp. Mot. TRO, Dkt. 4, at 30). As a result, BidPrime has lost business opportunities and delayed product launch timelines. (*Id.*). It has also curtailed access to free trial services and suspended customer accounts, damaging customer relationships. (*Id.*). BidPrime argues that these opportunity costs and reputational damages are difficult to quantify. (*Id.*).

BidPrime has not, however, shown that such harm is likely to continue to occur during the pendency of this litigation in the absence of a TRO. On the contrary, the evidence before the Court at this stage suggests that it is unlikely that Defendants will continue to access BidPrime's website without authorization. Rubenstein emailed BidPrime executive Stephen Hetzel on June 7, 2018, in which he "assure[d Hetzel] that nothing like [what is described in BidPrime's complaint] is continuing or ever will be to my knowledge." (Rubenstein email, Defs.' Ex. K., Dkt. 11-13). Defendants' counsel represented to the Court that the laptops used to access BidPrime's website have been sent to a third-party company to be imaged. BidPrime has shown the ability to detect Defendants' attempts to access their website, not only from Defendants' own company network but also from proxy IP addresses. (Schwartzbeck Decl., Pl.'s Ex. A, Dkt. 4-1, ¶¶ 23–43). BidPrime has been able to successfully block several of Defendants' attempts. (*See, e.g.*, *id.* ¶ 42). Taken together, these facts do not suggest that it is likely that Defendants will access or attempt to access BidPrime's website without authorization during the pendency of the litigation. The Court therefore finds that BidPrime has failed to meet its burden to demonstrate irreparable harm at this stage in the litigation. Having made that finding, the Court need not address whether BidPrime met its burden with respect to the remaining TRO requirements as to these claims.

## IV. CONCLUSION

Because BidPrime has failed to make the showing necessary for this Court to enter a TRO, the Court will not enter BidPrime's requested relief at this time. **IT IS THEREFORE ORDERED** that BidPrime's motion, (Dkt. 3), is **DENIED**.

In its motion, BidPrime also asks the Court to enter a preliminary injunction against Defendants and requests an evidentiary hearing. (*Id.* at 4). The parties shall appear for a telephone conference at **10:30 a.m. CDT on June 28, 2018**, to discuss scheduling, preliminary discovery, and any other matters relevant to BidPrime's request for a preliminary injunction and an associated hearing.

**SIGNED** on June 18, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE