UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | | |
|---|---|---|---|
| BIDPRIME, LLC, | § | | |
| | § | | |
| *Plaintiff* | § | | |
| v. | § | CIVIL ACTION | 1:18-CV-00478-RP |
| | § | | |
| SMARTPROCURE, INC., and | § | | |
| JEFFREY RUBENSTEIN, | § | | |
| | § | | |
| *Defendants.* | § | | |

## PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado St., Suite 2400
Austin, Texas  78701
512-495-6300 – Telephone
512-474-0731 – Facsimile

Cynthia Saiter
State Bar No. 00797367
csaiter@scottdoug.com
Santosh Aravind
State Bar No. 24095052
saravind@scottdoug.com
Stephanie Kover
State Bar No. 24102042
skover@scottdoug.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

I.      SUMMARY ........................................................................................................... 1

II.     RELEVANT FACTUAL BACKGROUND ........................................................... 2

        A.      This lawsuit ............................................................................................... 2

        B.      BidPrime served targeted discovery requests focused on Defendants' decision to
                scrape and method of scraping BidPrime's data. .................................................... 3

        C.      After SmartProcure produced some documents, BidPrime identified specific
                issues with SmartProcure's production and attempted to resolve them—to no
                avail. ............................................................................................................. 5

        D.      Unresolved problems with SmartProcure's production. ........................................ 6

                1.      The key UpWork chat log between Rubenstein and Michal Kras, the Polish
                        developer they hired to create the BidPrime.com scraping script, is
                        incomplete. ..................................................................................... 6

                2.      Categories of Relevant, Responsive Documents Exist But Are Missing. ........ 6

        E.      The challenged attorneys' eyes only designations. .............................................. 8

III.    ARGUMENT ......................................................................................................... 9

        A.      Legal Standards ......................................................................................... 9

        B.      BidPrime's Discovery Requests are narrowly tailored and directly relevant to the
                preliminary injunction hearing scheduled for December 12, 2018. ....................... 9

                1.      The complete UpWork chat between Rubenstein and Kras is relevant and
                        should be produced. ........................................................................ 10

                2.      Responsive GitHub and Slack communications are relevant and should be
                        produced. ........................................................................................ 12

                3.      Responsive documents stored in Google Drive are relevant and should be
                        produced. ........................................................................................ 13

        C.      The Court should remove the challenged attorneys' eyes only designations. ....... 14

CONCLUSION ........................................................................................................... 16

TABLE OF AUTHORITIES

**Cases**

*Bartholomew v. Avalon Capital Group, Inc.*,
    278 F.R.D. 441 (D. Minn. 2011) ................................................................................ 12

*DeFazio v. Hollister, Inc.*,
    No. Civ–5–04–1358, 2007 WL 2580633 (E.D. Cal. Sept. 5, 2007) ........................... 16

*Evon v. Law Offices of Sidney Mickell*,
    No. S–09–0760, 2010 WL 455476 n. 1 (E.D. Cal. 2010) .......................................... 11

*Hobbs v. Petroplex Pipe & Constr., Inc.*,
    No. MO:17-CV-00030-DC, 2018 WL 3603073 (W.D. Tex. Jan. 29, 2018) .............................. 9

*In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*,
    No. 3:05–MD–527, 2007 WL 79312 (N.D. Ind. 2007) .......................................... 12

*In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
    Nos. 08–1945, 08–333, 2009 WL 1026013 (S.D.N.Y. 2009) .................................. 12

*Motorola, Inc. v. Lemko Corp.*,
    No. 08 C 5427, 2010 WL 2179170 (N.D. Ill. June 1, 2010) ............................... 9, 15

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) ........................................................... 12

*U.S. ex rel. Simms v. Austin Radiological Ass'n*,
    292 F.R.D. 378 (W.D. Tex. 2013) ........................................................... 12

**Statutes**

Fed. R. Civ. P. 26(b)(1)................................................................................ 9

Fed. R. Civ. P. 34(a) ................................................................................ 13

Fed. R. Civ. P. 37(a)(1)................................................................................ 9

Fed. R. Civ. P. 37(a)(3)(B) ........................................................................ 9

Fed. R. Civ. P. 37(a)(4)................................................................................ 9

Plaintiff BidPrime, LLC ("BidPrime") files this Motion to Compel Production of Documents in response to certain of BidPrime's Requests for Production ("BidPrime's Discovery Requests") in advance of the upcoming preliminary injunction hearing and to have certain documents re-designated from attorneys' eyes only under the terms of the governing protective order.

## I.      SUMMARY

This case involves computer hacking, theft, and corporate espionage.  Defendant SmartProcure d/b/a GovSpend ("SmartProcure") and Jeffrey Rubenstein (collectively, "Defendants") accessed BidPrime's website without authorization in violation of federal civil law and stole BidPrime's highly valuable data and trade secrets in an effort to obtain a competitive advantage.  Defendants hired a developer to create scripts that could go undetected and scrape large amounts of data from BidPrime's website.  Using virtual disguises, Defendants systematically hacked onto BidPrime.com, despite being kicked out multiple times.  Based on these acts, BidPrime sued Defendants for violation of the Computer Fraud and Abuse Act ("CFAA"), misappropriation of trade secrets, breach of contract, and other claims.

In furtherance of its claims and in advance of the preliminary injunction hearing set for December 12, 2018, BidPrime served Discovery Requests seeking documents (1) referencing BidPrime or BidPrime.com, including third party communications, since January 1, 2017; and (2) concerning the hiring platform UpWork, including Defendants' contacts with third-party freelance developers on UpWork to mine or scrape BidPrime.com.

Although SmartProcure agreed to produce documents, the discovery produced so far has demonstrated that SmartProcure has failed to fully respond to these requests.  There are obvious gaps in the current production that reveal SmartProcure is withholding categories of responsive,

non-privileged documents known to exist.  There is also evidence that SmartProcure has failed to produce the full contents of a critical chat log between Rubenstein and the software developer in Poland who developed the script to steal BidPrime's data.

Because SmartProcure refuses to produce these documents on its own, BidPrime respectfully requests this Court to compel SmartProcure to honor its discovery obligations.

## II.     RELEVANT FACTUAL BACKGROUND

### A.  This lawsuit

BidPrime initiated this lawsuit on June 5, 2018, bringing claims against Defendants under the CFAA, the Stored Wire and Electronic Communications and Transaction Records Access Act, the Texas Harmful Access by Computer Act, and the Texas Uniform Trade Secrets Act, and various state common law claims.  Pl.'s 1st Am. Compl., Dkt. 34 ("FAC") at 30-44.  Ultimately, BidPrime seeks a permanent injunction that will protect BidPrime and prevent Defendants from accessing or scraping BidPrime.com again, as well as damages and other relief.  *Id.* at 44-47.

After the Court denied BidPrime's request for a TRO, the Court then set a preliminary injunction hearing on October 5, 2018, which has since been adjourned to December 12, 2018, to allow the parties to work out discovery disputes, take additional discovery, and participate in mediation.  *See* Order Granting Continuance, Dkt. 49.  A third party has completed a forensic analysis of Rubenstein's and another SmartProcure employee's computers and the final results were produced to BidPrime pursuant to an agreed protocol on September 11, 2018.  *See* **Ex. Q**, Agreed Forensic Protocol.

To date, BidPrime has deposed two third-parties, Amy Fuss at School Specialties and Mary Goltz at PPG, the two customers whose BidPrime.com credentials Defendants used to access and scrape data from BidPrime.com.  Those depositions have confirmed that although Defendants obtained Fuss' and Goltz' BidPrime.com passwords, those customers did not

authorize or otherwise give permission to let Defendants access BidPrime.com as they pleased or to scrape data from BidPrime.com.[1] *See, e.g.*, **Ex. R**, Dep. Amy Fuss Tr. 50:13-52:22 (******
*************************************REDACTED*[2]********************************** ******).

Defendant Jeffrey Rubenstein has refused to participate in discovery, claiming that the Court has no jurisdiction over him.  *See, e.g.*, **Ex. S**, Rubenstein's Objs. & Resps. Pl.'s RFPs. The Court has yet to rule on Rubenstein's motion to dismiss for lack of personal jurisdiction.

**B. BidPrime served targeted discovery requests focused on Defendants' decision to scrape and method of scraping BidPrime's data.**

On July 7, 2018, BidPrime has served targeted discovery requests that seek documents relating to Defendants' decision to access BidPrime.com and scrape BidPrime's data and the methods by which Defendants scraped BidPrime's data.  In Requests for Production ("RFP") Nos. 5, 6, and 7, BidPrime sought documents that reference it or its website BidPrime.com, including communications among SmartProcure or between SmartProcure and any third party since January 1, 2017.  *See* **Ex. A**, Pl.'s Disc. Reqs., at 12-13.  In RFP Nos. 20, 21, and 22, BidPrime has sought documents that concern the hiring platform UpWork,[3] including documents concerning Defendants' contact with third-party freelance developers to mine or scrape BidPrime.com or any other company.  *Id.* at 16.  The relevant Requests are reproduced below:

---

[1] At this time, the transcript of the deposition of Mary Goltz is still forthcoming and only the rough transcript of the deposition of Amy Fuss is available.

[2] This Motion contains Classified Information and in accordance with the Confidentiality and Protective Order entered in this matter, an unredacted version of the Motion is being tendered to the court and opposing counsel *in-camera* but not filed.

[3] UpWork, the "world's leading freelancing website" was a key platform from which Defendants hired and used the Polish developer Michal Kras to create bots and scrape BidPrime.com.  *See, e.g.*, **Ex. G**, SmartProcure-009573-84 (produced UpWork chat log); www.upwork.com/about/ (last visited Oct. 1, 2018).

REQUEST FOR PRODUCTION NO. 5:

Produce all correspondence, notes, e-mail, telephone messages, text messages, and other documents and tangible things constituting and/or concerning communications between or among you and a third party (including but not limited to BidPrime customers and/or your customers) including all documents you sent to or received from that party, that makes reference of, refers to, speculates as to, or otherwise discusses BidPrime or BidPrime.com since January 1, 2017.

REQUEST FOR PRODUCTION NO. 6:

Produce all correspondence, notes, e-mail, telephone messages, text messages, and other documents and tangible things constituting and/or concerning communications between or among you, including all documents you sent to or received, that makes reference of, refers to, speculates as to, or otherwise discusses BidPrime or BidPrime.com since January 1, 2017.

REQUEST FOR PRODUCTION NO. 7:

Produce all documents referring or relating to BidPrime.

REQUEST FOR PRODUCTION NO. 20:

Produce all documents referring or relating to UpWork, and any other third parties that you have contacted to participate in data mining or scraping of BidPrime.com or any other company.

REQUEST FOR PRODUCTION NO. 21:

Produce all documents referring or relating to UpWork, including but not limited to membership registration, job postings, applications, responses or hirings that relate to data mining or scraping of BidPrime.com or any other company.

REQUEST FOR PRODUCTION NO. 22:

Produce all correspondence, notes, e-mail, telephone messages, text messages, and other documents and tangible things constituting and/or concerning communications between or among you and UpWork, including all documents you sent to or received from UpWork that relate to data mining or scraping of BidPrime.com, including freelancers . . . Michal K[ras], . . . .[4]

*Id.* at 12-13, 16.

---

[4] In RFP No. 22, in addition to UpWork communications with Michal Kras, BidPrime also specifically requested communications with other freelance developers that "relate to data mining or scraping of BidPrime.com." **Ex. A**, Pl.'s Disc. Reqs. at 16.  SmartProcure has since represented that that only Michal Kras worked on the BidPrime script.  Based on this representation, BidPrime is only seeking to compel production of the UpWork communications with Michal Kras.

**C.  After SmartProcure produced some documents, BidPrime identified specific issues with SmartProcure's production and attempted to resolve them—to no avail.**

On August 6, 2018, SmartProcure served its Objections and Responses.  **Ex. B**, SmartProcure's Objs. & Resps. RFPs.  As to each of the RFPs at issue in this Motion, subject to certain objections, SmartProcure agreed to produce "responsive non-privileged documents" and some responsive documents were produced.[5]  *See id.* at 3-4, 9-10.

As discussed in the sections that follow, BidPrime discovered multiple problems with SmartProcure's production.  In a September 6, 2018 letter, BidPrime alerted SmartProcure to these problems and requested SmartProcure to comply with its discovery obligations.  **Ex. C**, Letter from S. Aravind to J. Boulette (Sept. 6, 2018).  In the letter, BidPrime also objected to SmartProcure's attorneys' eyes only designation of certain documents that contain the script Defendants developed and used to scrape data from BidPrime.com and its output and requested that they be re-designated as confidential.  *Id.* at 6-7.  The parties conferred by telephone on Tuesday, September 11, 2018 to resolve their differences regarding discovery.  On September 13, 2018, and again on October 3, 2018, after SmartProcure produced additional documents, BidPrime re-urged its objection to the attorneys' eyes only designations of the script.  **Ex. D**, Email from C. Saiter to M. Marin, et al. (Sept. 13, 2018); **Ex. E**, Email from C. Saiter to M. Marin, et al, (Oct. 3, 2018).

SmartProcure has also provided a privilege log.  **Ex. F**, SmartProcure Privilege Log.  But neither the additional production nor the privilege log addressed or resolved the problems that have precipitated the need for this Motion, as detailed below.

---

[5] SmartProcure objected to each of these Requests as overbroad, seeking information that is not relevant, not proportional, and unduly burdensome—but then stated that "[s]ubject to . . . the foregoing . . . responsive non-privileged documents are being produced."  **Ex. B**, SmartProcure's Objs. & Resps. RFPs at 9-10.

**D.  Unresolved problems with SmartProcure's production.**

    1.    <u>The key UpWork chat log between Rubenstein and Michal Kras, the Polish developer they hired to create the BidPrime.com scraping script, is incomplete.</u>

One of the documents SmartProcure produced is an UpWork chat log between the Polish freelance developer Michal Kras and Defendant Jeffrey Rubenstein concerning Kras' engagement by Defendants and his development of a script to scrape BidPrime.com.  *See* **Ex. G**, SmartProcure-009573-84 (produced UpWork chat log).  But the version produced by SmartProcure appears to be incomplete.  *See id.*; **Ex. H**, SmartProcure-008781 (showing a clearer version of the first page of the produced portion).  Aside from one message on June 6, 2018, SmartProcure selectively produced only a 3-day portion of the chat that spans from May 9, 2018 to May 12, 2018.  *See* **Ex. G**.  Detail on the first page of the produced portion shows that the chat extends prior to May 9, 2018, but that SmartProcure did not include those prior conversations from the chat in their production.  *See* **Ex. H**.  SmartProcure's privilege log does not identify that it is withholding portions of the chat log or assert any privilege in relation to it.  *See* **Ex. F**, SmartProcure Privilege Log.  To date, and despite BidPrime's efforts to resolve this issue, SmartProcure continues to refuse to produce the complete chat log.

    2.    <u>Categories of Relevant, Responsive Documents Exist But Are Missing.</u>

Inspection of SmartProcure's production reveals that entire categories of documents that are clearly responsive to the relevant Requests exist, yet are missing.

    a.    GitHub and Slack Communications.

Other produced documents reveal that Defendants and their developers used messaging applications like Slack and software development tools like GitHub for messaging and sharing links and documents when they were developing the script Defendants used to scrape data from BidPrime.com.  For example, one produced email references a chat between GovSpend

employee Dominique Northecide and developer Michal Kras, but the chat log was not produced. *See* **Ex. I**, SmartProcure-007056 (referring to chat communications relating to the script to obtain BidPrime's data such as (\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\**REDACTED* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*). Another produced email from Michal Kras (using the handle Krasiu) concerns issues with Defendants' BidPrime script and references messages on Slack, but communications from Slack accounts were not produced. *See* **Ex. J**, SmartProcure-008711 (\*\*\*\*\**REDACTED*\*\*\*\*\*). Aside from the partially-produced UpWork chat log, SmartProcure appears to have only performed email searches for responsive communications. SmartProcure refuses to produce the communications housed in their GitHub and Slack accounts.

      b.    Referenced Google Docs, Documents Stored in Google Drive, and Other Documents.

Despite BidPrime's requests for *documents*, SmartProcure refuses to search for and produce responsive documents other than communications—including Excel files, Google Docs, Google Sheets, and other documents stored in Google Drive. Other produced documents confirm that responsive documents exist and have not been produced. For example, the UpWork chat reveals that Rubenstein and developer Michal Kras used Google Docs when they were developing the script to scrape BidPrime.com. *See* **Ex. G** at SmartProcure-009583. The forensic examination further reveals Rubenstein stored documents that expressly reference BidPrime in Google Drive. *See, e.g.*, **Ex. K**, Excerpt from Spreadsheet of Partial Files Recovered in Forensic Examination. These documents are apparently no longer available on Rubenstein's computer because he \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*REDACTED\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*, the day that BidPrime filed its complaint, essentially deleting those files. *See* **Ex. L**, Suppl. to Forensic Examination Summary Protocol Findings at 1. Even if these documents do not exist on Rubenstein's computer, they should exist in the cloud on Google Drive, unless Rubenstein has deleted them

there as well (in which case, BidPrime may be entitled to a spoliation instruction).  In any event, Defendants should produce these documents or explain that they no longer exist.

Because SmartProcure refuses to produce these documents on its own, BidPrime respectfully requests this Court to compel SmartProcure to produce these documents.

**E.      The challenged attorneys' eyes only designations.**

In accordance with the Protective Order (Dkt. 28), and after conferring with opposing counsel but being unable to achieve a resolution, BidPrime objects to Defendants' attorneys' eyes only designations of certain documents that (1) contain the web-scraping script that Defendants specifically developed so that they could enter and scrape data from BidPrime's website,[6] and (2) the output Defendants obtained after testing and running the script on BidPrime.com.[7]  *See, e.g.*, **Ex. N**, SmartProcure-013249-52 (script example); **Ex. O**, SmartProcure-007054-55 (script output example).  BidPrime requests that this Court requests remove the attorneys' eyes only designations of these key documents.

---

[6] BidPrime seeks the de-designation of the thirteen following documents that contain versions of the script developed to enter and scrape BidPrime.com:  SmartProcure-013269-71; SmartProcure-013272-75; SmartProcure-013276-79; SmartProcure-013280-83; SmartProcure-013284-87; SmartProcure-013288-91; SmartProcure-013292-95; SmartProcure-013296-99; SmartProcure-013265-68; SmartProcure-013260-64; SmartProcure-013257-60; SmartProcure-013253-56; and SmartProcure-013249-52.

[7] BidPrime seeks the de-designation of the thirty following documents that contain script output: SmartProcure-000011;      SmartProcure-000012;      SmartProcure-000013;      SmartProcure-000014; SmartProcure-000015;      SmartProcure-000016;      SmartProcure-000017;      SmartProcure-000018; SmartProcure-000019;      SmartProcure-000020;      SmartProcure-000020-1903;      SmartProcure-001904; SmartProcure-001905;      SmartProcure-001906-6573;      SmartProcure-006574;      SmartProcure-006967; SmartProcure-006968;      SmartProcure-006987;      SmartProcure-006999-7000;      SmartProcure-007054-55; SmartProcure-007057;      SmartProcure-007058;      SmartProcure-007059;      SmartProcure-007060; SmartProcure-007061;      SmartProcure-007062;      SmartProcure-007063;      SmartProcure-007064; SmartProcure-007065; and SmartProcure-007066.

## III.    ARGUMENT

### A.  Legal Standards

Federal Rule of Civil Procedure 37(a) permits a party to move for an order compelling production of documents.  Fed. R. Civ. P. 37(a)(1), (a)(3)(B).  For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).   When a party fails to produce documents requested under Rule 34, a court can compel their production.  Fed. R. Civ. P. 37(a)(3)(B); *see, e.g.*, *Hobbs v. Petroplex Pipe & Constr., Inc.*, No. MO:17-CV-00030-DC, 2018 WL 3603073, at *1 (W.D. Tex. Jan. 29, 2018).

When a designation of materials as confidential under a protective order is challenged, the designating party bears the burden of justifying the need for enforcement of the order.  *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *4 (N.D. Ill. June 1, 2010).

### B.    BidPrime's Discovery Requests are narrowly tailored and directly relevant to the preliminary injunction hearing scheduled for December 12, 2018.

There is no question that the requested documents are relevant to BidPrime's claims against Defendants, and are therefore discoverable.  *See* Fed. R. Civ. P. 26(b)(1).  BidPrime alleges that Defendants accessed BidPrime's website without authorization in violation of federal civil law (e.g., the CFAA), and stole BidPrime's highly valuable data and trade secrets in an effort to obtain a competitive advantage.  *See, e.g.*, FAC at 1, 16-30.  Based on the discovery provided to date, it is undisputed that Defendants hired a developer to create scripts that could go undetected and scrape large amounts of data from BidPrime's website, and that, Defendants systematically hacked onto BidPrime.com—using a variety of techniques, including fake accounts, various scraping methods, and using different IPs addresses—all meant to avoid

9

detection, despite being kicked out of the BidPrime website on multiple occasions.  *See, e.g.*, *id.* at 17-18, 22-27; **Ex. G** at SmartProcure-009852 (Rubenstein telling Kras: ****************

*****************************REDACTED************************************

****************);  **Ex. M**,  SmartProcure-008704  (Rubenstein  telling  an  employee

****************************REDACTED*********************************

*******************************).

   Although discovery has revealed some details about when and how Defendants began their efforts to hack onto BidPrime.com and scrape data from it, whom Defendants engaged to enter onto and scrape data from BidPrime.com, and how the script used to scrape BidPrime.com was developed, and what measures were taken to evade BidPrime's security protections, there are still questions that exist.  For example, there are no internal communications that discuss *why* Defendants decided to scrape data from BidPrime.com, or who was involved in that decision-making process.  The documents BidPrime seeks below are directly relevant to that inquiry and are critical for the upcoming preliminary injunction hearing.

   1.   The complete UpWork chat between Rubenstein and Kras is relevant and should be produced.

   The UpWork chat log between Rubenstein and Kras—the developer Defendants engaged to create a script to enter and scrape data from BidPrime.com—is clearly relevant to BidPrime's claims.  *See* **Ex. G**, SmartProcure-009573-84 (produced UpWork chat log).  BidPrime is entitled to see the *entire* chat, not just the 3-day portion of the chat that SmartProcure chose to produce.  *See id.*  As currently known to BidPrime, Defendants' unauthorized accesses of BidPrime.com began in February 2018, although there may be prior instances of which BidPrime is not yet aware.  *See* FAC at 16.

Further, based on its independent research, BidPrime believes that Defendants hired Kras in March 2018, although the date Kras was first engaged may be earlier. *See id.* at 17-19. A complete and full version of the UpWork chat could show when Kras was hired and the reasoning behind Defendants' decision to scrape—which could show intent to defraud and is relevant to BidPrime's CFAA claim. Similarly, a complete version could show that SmartProcure intended to take BidPrime's trade secrets—and bear directly on BidPrime's trade secret misappropriation claim.

At the TRO hearing, SmartProcure responded that Defendants only went onto BidPrime.com to "poke around" and spot-check bids at customer requests. *See, e.g.*, **Ex. P**, TRO Hr'g Tr. at 22:8-24 (Defendants' counsel stating that Defendants "weren't out to steal anything. . . . They poke[d] around."). Rubenstein also submitted an after-the-fact declaration to that effect. *See* Def. SmartProcure's Resp. Pl.'s Appl. TRO, Dkt. 11, Ex. A (Decl. Rubenstein) ¶¶ 14-20. However, the produced portion of the UpWork chat contains statements that refute this spot-check story. *See* **Ex. G**. Rather, the chat shows that Rubenstein directed Kras to "***************REDACTED********" and stated that "****REDACTED****." *See id.* at SmartProcure-009582-84 (emphasis added). The prior communications in this conversation chain could reveal similar statements.

It is not for Defendants to pick and choose which portions this key chat they share with BidPrime. As one Western District of Texas court has emphasized, a party cannot, as SmartProcure has done here, unilaterally redact unprivileged information, even if it believes it is irrelevant or nonresponsive:

> "Redaction is, after all, an alteration of potential evidence" and "a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case." *Evon v. Law Offices of Sidney Mickell*, No. S–09–0760, 2010 WL 455476, at *2 n. 1

> (E.D. Cal. 2010). Furthermore, "[i]t is a rare document that contains only relevant information." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011). Oftentimes, "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information." *Id.*; *see also In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, Nos. 08–1945, 08–333, 2009 WL 1026013, at *1 (S.D.N.Y. 2009) ("[Unilateral] redactions are generally unwise. They breed suspicions, and they may deprive the reader of context."); *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, No. 3:05–MD–527, 2007 WL 79312, at *5 (N.D. Ind. 2007) ("Generally, the Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored.").

*U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013); *see also Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 299 (N.D. Tex. 2017) ("a responding party cannot withhold a 50–page report because only two pages contain responsive information—and cannot redact nonprivileged information from any responsive document because the information is not itself responsive[]"). This Court should order SmartProcure to produce a full and complete version of Rubenstein's UpWork chat with Kras.

      2.    <u>Responsive GitHub and Slack communications are relevant and should be produced.</u>

Defendants and their developers used message and software development applications like Slack and GitHub for messaging and sharing links and documents, including when they were developing the script Defendants used to scrape data from BidPrime.com. *See, e.g.*, **Ex. I**, SmartProcure-007056 (referencing an unproduced chat log); **Ex. J**, SmartProcure-008711 (*****REDACTED*******). Such communications, as with all communications concerning BidPrime and BidPrime.com, are at minimum responsive to BidPrime's RFP Nos. 5, 6, and 7, and are directly relevant to BidPrime's claims. *See* **Ex. A**, Pl.'s Disc. Reqs. at 12-13. In light of Defendants' known use of these other messaging platforms, SmartProcure must do more than simply perform email searches for responsive communications. *See id.* at 3-4 (defining the term "document" as synonymous with that term as used in Federal Rule of Civil Procedure 34(a) and

defining "communication" as the "transmittal of information . . . by any means"); *see also* Fed. R. Civ. P. 34(a).   Based on the references in the existing production, these unproduced communications could further reveal the measures Defendants were taking to avoid detection by BidPrime and their intent to defraud, and be relevant to BidPrime's CFAA, trade secret misappropriation, and breach of contract claims.   *See, e.g.*, **Ex. I**, SmartProcure-007056 (*******************************REDACTED******************************* **************).   This Court should order SmartProcure to search for and produce all responsive, non-privileged communications housed in their GitHub and Slack accounts.

       3.    <u>Responsive documents stored in Google Drive are relevant and should be produced.</u>

Similarly, this Court should order SmartProcure to search for and produce *all* responsive documents—including Excel files, Google Docs, Google Sheets, and other documents stored in Google Drive.  *See* **Ex. A**, Pl.'s Disc. Reqs. at 3-4 (broadly defining the terms "document" and "communication"); *see also* Fed. R. Civ. P. 34(a).  SmartProcure must do more than conduct an email search for responsive documents, especially when Defendants are known to have stored responsive and highly relevant documents on cloud platforms like Google Drive.  *See, e.g.*, **Ex. G**, SmartProcure-009573-84 (Rubenstein and the developer Kras referring to a Google Doc they used to ******************REDACTED*********************); **Ex. K**, Excerpt from Spreadsheet of Partial Files Recovered in Forensic Examination (artifacts show Rubenstein stored documents about BidPrime in Google Drive).

These referenced Google Docs and other cloud-stored documents could show the motivation behind Defendants' decision to scrape BidPrime.com—which could show intent to defraud and be relevant to BidPrime's CFAA claim, or could show that SmartProcure intended to take BidPrime's trade secrets—and bear directly on BidPrime's trade secret misappropriation

claim.   While these documents are apparently no longer available on Rubenstein's computer because he updated his computer's operating system on June 5, 2018—essentially wiping his hard drive on the very day that BidPrime filed its complaint (*see* **Ex. L**, Suppl. to Forensic Examination Summary Protocol Findings at 1)—they should still exist in the cloud on Google Drive.   Because SmartProcure refuses to produce these documents on its own, BidPrime respectfully requests this Court to compel SmartProcure to honor its discovery obligations.

**C.**      **The Court should remove the challenged attorneys' eyes only designations.**

It is imperative that BidPrime itself (and ultimately the Court) be able to view and assess (1) the web-scraping script and (2) its output.   *See, e.g.*, **Ex. N**, SmartProcure-013249-52 (script example); **Ex. O**, SmartProcure-007054-55 (script output example).   These documents contain information that is highly probative of the facts concerning how Defendants gained access to BidPrime.com and its data; that Defendants intentionally engineered their scripts to go undetected; that Defendants intended to, over time, scrape *all* data from BidPrime.com; that Defendants knew they did not have authorization to access BidPrime.com; and that Defendants had constructive notice of BidPrime.com's terms of service.   The script and it output lies at the heart of BidPrime's claims.

The script, which Defendants specifically developed so that they could enter and scrape data from *BidPrime's* website, has no legitimate business purpose and therefore cannot qualify as a "trade secret."   Defendants have already represented to the Court that they will not scrape BidPrime again while this lawsuit is pending, so there is no utility in keeping this information away from BidPrime.   Why shouldn't BidPrime be able to view the different versions of tools that Defendants created and used specifically to crack into BidPrime.com and steal its data?

Why shouldn't BidPrime be able to view the output Defendants obtained from BidPrime.com by the use of those illegitimate tools?

It is clear from references in documents that SmartProcure produced that Defendants made iterative changes to the script so that it would evade BidPrime's security protections.  *See, e.g.*, **Ex. G** at SmartProcure 009852 (Rubenstein telling Kras: "************REDACTED****

*****************************************************************************

*****************************************************************").  The implementation of such measures goes directly to BidPrime's claims.  They show Defendants' lack of authorization (CFAA), that Defendants had constructive knowledge of BidPrime.com's terms of service (breach of contract), and the extensive measures Defendants had to take to obtain BidPrime's protected data (trade secret misappropriation).  *See, e.g.*, FAC at 30-33, 35-37, 40-44.

However, to establish the full and actual extent of this nefarious coding, the script and its output must be assessed.  The attorneys' eyes only designations obstruct BidPrime's ability to assess and use this key evidence.  Even BidPrime's counsel's high-level examination of the script and output documents has led to their layperson conclusion that these documents are critical to BidPrime's claims.  However, BidPrime's counsel lacks the technical expertise, as well as intimate knowledge of BidPrime.com, to be able to effectively assess the engineering of the script, its output results, and their impacts on this case.  Conveniently, the attorneys' eyes only designations prevent the entity most well-versed in BidPrime.com and its security—BidPrime itself—from even knowing what the documents contain.

"Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant."  *Motorola, Inc.*, 2010 WL

2179170, at \*5.  To allow Defendants to blindfold BidPrime when it comes to the script and its output, and thus hamper BidPrime's ability to prosecute its case, would be unjust, especially when the script was developed to scrape BidPrime.com and has no legitimate purpose.  As one court has warned regarding the overuse of attorneys' eyes only designations:

> [T]his is not a case where the clients have no real, meaningful input to make into tactical decisions, or where their input would not be helpful in determining the bona fides of the information submitted by defendants.  Moreover, the very real specter of over-designation of "attorneys' eyes only" information exists, and plaintiffs should not be put in a position where they are essentially kept in the dark about the important facts of the case.

*DeFazio v. Hollister, Inc.*, No. Civ–5–04–1358, 2007 WL 2580633, at \*2 (E.D. Cal. Sept. 5, 2007) (further reasoning that because "[o]ne of the plaintiffs . . . is familiar with accounting concepts, . . . whether other experts might be able, at a price, to review the information, the fact remains that this plaintiff can be of substantial "free" assistance").

The script was aimed at BidPrime's website, and aimed at getting around BidPrime's security measures.  BidPrime knows its website and security measures best, and is in the best position to translate the script and output.  But the attorneys' eyes only designation keeps BidPrime in the dark.  BidPrime requests that this Court remove the attorneys' eyes only designations for the script and output documents.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff BidPrime, LLC respectfully requests that the Court grant this Motion to Compel Production of Documents and order Defendant SmartProcure, Inc. to:

(1) within 10 days of this Order, further and specifically produce the following documents responsive to BidPrime's RFP Nos. 5, 6, 7, 20, 21, and 22 to the undersigned counsel:

(a) all responsive communications with Michal Kras, including the complete chat log that exists on UpWork between Michal Kras and Jeffrey Rubenstein, a partial of version of which is attached hereto as **Exhibit G**;

(b) all responsive communications and documents, including communications and documents housed in GitHub or Slack accounts;

(c) all responsive documents, including Excel files, Google Docs, Google Sheets, and other documents stored in Google Drive; and

(2) within 5 days of this Order, remove the attorneys' eyes only designations on the script and output documents listed in footnotes 6 and 7 in this redacted version of the Motion.

BidPrime also requests the Court to award BidPrime all other relief, at law or in equity, to which it is justly entitled.

Respectfully submitted,

**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado St., Suite 2400
Austin, Texas  78701
512-495-6300 – Telephone
512-474-0731 – Facsimile

By:     */s/ Cynthia L. Saiter*
Cynthia Saiter
State Bar No. 00797367
csaiter@scottdoug.com
Santosh Aravind
State Bar No. 24095052
saravind@scottdoug.com
Stephanie Kover
State Bar No. 24102042
skover@scottdoug.com

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that the parties have attempted to confer regarding the specific discovery disputes at issue, as reflected by Exhibits C-E, and to resolve the disputes without court intervention, and Defendants have refused to provide the requested information.

*/s/ Cynthia L. Saiter*
Cynthia L. Saiter

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of October 2018, I electronically filed the foregoing using the Court's ECF system, which will electronically service the same upon all counsel of record.

*/s/ Cynthia L. Saiter*
Cynthia L. Saiter