UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BIDPRIME, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:18-CV-478-RP |
| | § | |
| SMARTPROCURE, INC., *d/b/a SmartProcure*, | § | |
| and JEFFREY RUBENSTEIN, | § | |
| | § | |
| Defendants. | § | |
| | § | |

# ORDER

Before the Court is Defendant Jeffrey Rubenstein's ("Rubenstein") Motion to Dismiss. (Dkt. 38). Plaintiff BidPrime, LLC ("BidPrime") sued Rubenstein and Defendant SmartProcure, Inc. ("SmartProcure"), a rival company, alleging that SmartProcure hacked BidPrime's website and scraped information. (Am. Compl., Dkt. 34, at 16). Rubenstein is SmartProcure's founder and CEO; BidPrime sued Rubenstein individually for his alleged role in the hacking. (*See* Resp. Mot. Dismiss, Dkt. 44, at 10). Rubenstein, a Florida resident, seeks to dismiss BidPrime's claims against him for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Mot. Dismiss, Dkt. 38, at 2). Having considered the motion, the parties' responsive briefing, the evidence, and the relevant law, the Court will deny the motion.

## I. LEGAL STANDARDS

The Federal Rules of Civil Procedure allow a defendant to assert lack of personal jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(2). "When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When, as here, the court considers a motion to dismiss for lack of personal jurisdiction without

1

holding an evidentiary hearing, the plaintiff need only present a *prima facie* case that personal jurisdiction is proper. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Even if the court receives discovery materials, unless there is a full and fair hearing, a district court should not act as a factfinder and must construe all disputed facts in the plaintiff's favor and consider them along with the undisputed facts and uncontroverted allegations. *Id.*; *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001) (per curiam).

## II. DISCUSSION

### *A. Due Process*

Because Rubenstein is not a Texas resident, (*see* Am. Compl., Dkt. 34, at 2), BidPrime has the burden to establish a *prima facie* case for this Court's personal jurisdiction over him. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). Because Texas's long-arm statute extends as far as constitutional due process allows, the two-step inquiry "collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018)

Exercising personal jurisdiction over a nonresident defendant is compatible with due process when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel*, 517 F.3d at 243 (cleaned up). There are two types of minimum contacts: those that give rise

2

to specific personal jurisdiction and those that give rise to general personal jurisdiction. *Lewis*, 252 F.3d at 358. BidPrime argues only that Rubenstein is subject to this Court's specific jurisdiction. (Resp. Mot. Dismiss, Dkt. 44, at 7).

In this circuit, specific personal jurisdiction is a claim-specific inquiry; a plaintiff bringing multiple claims that arise out of different forum contacts must establish specific jurisdiction for each claim. *McFadin*, 587 F.3d at 759. Specific jurisdiction applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243. The touchstone of specific-jurisdiction analysis is "whether the defendant's conduct shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (cleaned up). Even a single contact can support specific jurisdiction if it creates a "substantial connection" with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985).

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Sangha*, 882 F.3d at 103. Due process requires that specific jurisdiction be based on more than the "random, fortuitous, or attenuated" contacts a defendant makes by interacting with people affiliated with the forum state. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The plaintiff thus "cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* at 285.

BidPrime asserts nine claims against Rubenstein; eight of them are intentional torts, and the ninth is a claim for breach of contract. (Am. Compl., Dkt. 34, at 30–44).[1] Rubenstein argues that BidPrime has failed to establish a *prima facie* case that he has minimum contacts with Texas for each claim. (Mot. Dismiss, Dkt. 38, at 10). Rubenstein argues that his alleged conduct took place in

---

[1] The same due process analysis applies when intentional torts are involved. *Walden*, 571 U.S. at 286.

Florida—"from IP addresses at his office or at his home"—rather than Texas. (*Id.*). The only alleged conduct between Rubenstein and Texas, he argues, is his "contact with BidPrime," which is insufficient to establish specific jurisdiction because the plaintiff cannot be the only link between the defendant and the forum. (*Id.* at 10–11). As for allegations that Rubenstein obtained unauthorized access to BidPrime's servers, Rubenstein offers a number of arguments—(1) BidPrime does not allege that Rubenstein accessed servers located in Texas, (*id.* at 15–16); (2) even if it had, the location of the servers is insufficient to establish minimum contacts, (*id.* at 16); and (3) Rubenstein did not know where BidPrime's servers were located in any event and therefore would not have purposefully targeted Texas by his alleged conduct, (*id.* at 17). BidPrime admits that Rubenstein scraped data from its server in Oregon. (Schwartzbeck Decl., Dkt. 44-1, ¶ 9).

Server location notwithstanding, Rubenstein knew that BidPrime was a Texas company. BidPrime alleges that Rubenstein operates one of BidPrime's "largest competitors," that he contacted BidPrime to propose working together, and that he proposed to buy unlimited access to BidPrime's website. (Am. Compl., Dkt. 34, at 12–13). Rubenstein has not disputed that he knew BidPrime was a Texas company. (*See* Rubenstein Decl., Dkt. 38, at 27–30). Rubenstein allegedly tried to register for free trial access to BidPrime's website ("BidPrime.com") using a fake name after his account was shut down. (Am. Compl., Dkt. 34, at 16). He allegedly used his computer to access BidPrime.com without authorization through another user's account. (*Id.* at 20). He allegedly hired a software developer to write a data-scraping program and directed that developer to scrape thousands of bid requests from BidPrime.com. (*Id.* at 17–20). He allegedly attempted to create two more accounts using fake names to access BidPrime.com, once successfully. (*Id.* at 22–23).

These allegations suffice to establish a *prima facie* case for specific jurisdiction in Texas. "Specific jurisdiction applies when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those

activities." *Walk Haydel*, 517 F.3d at 243. Both of those conditions are met here. All of Rubenstein's alleged conduct constitutes purposeful action directed at a company that he knew to be located in Texas, and he does not dispute that the injuries alleged in this case arise out of this conduct. These allegations are not "random, fortuitous, or attenuated" contacts with Texas; they are repeated intentional actions to harvest data from a Texas company. A defendant who repeatedly and purposefully obtains unauthorized access to servers he knows belong to a Texas company can reasonably anticipate being haled into court in Texas.

That Rubenstein scraped data from a BidPrime server sited in Oregon is irrelevant. Courts have repeatedly rejected the argument that a server's physical location is relevant to specific jurisdiction. *See Future World Elecs., LLC v. Results HQ, LLC*, No. CV 17-17982, 2018 WL 2416682, at *3 (E.D. La. May 29, 2018) ("[A] plaintiff may not 'rely on the fortuitous location' of a server to establish personal jurisdiction over a defendant who accessed that server.") (quoting *Chang v. Virgin Mobile USA, LLC*, No. 07-1767, 2009 WL 111570, at *3 (N.D. Tex. Jan. 16, 2009)); *Motio, Inc. v. BSP Software LLC*, No. 3:16-CV-00331-O, 2016 WL 9559916, at *6 (N.D. Tex. May 27, 2016) ("[T]he crucial inquiry is whether Defendants purposefully directed their alleged tortious actions at Texas residents or 'communicated' with Texas, regardless of the server's actual location. . . . Defendants knew that Motio was located in Texas, that in their capacities as BSP principals they would have known that their actions were purposefully directed toward a Texas corporation."); *BGDG Enter., LLC v. Barley & Swine*, No. A-13-CA-719-SS, 2014 WL 12479650, at *4 (W.D. Tex. Jan. 23, 2014) (noting that "courts have rejected the physical location of servers as a basis for personal jurisdiction"). The question is whether Rubenstein's conduct "connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Rubenstein did not direct his conduct at a server in Oregon; he had no idea where BidPrime's servers were located. (Rubenstein Decl., Dkt. 38, at 28 ¶ 9). Construing disputed facts in BidPrime's favor, Rubenstein hacked a Texas company to steal its

5

trade secrets in order to siphon business away from that company. (*See* Am. Compl., Dkt. 34). Just as the fortuitous location of an unknown server cannot create specific jurisdiction in the server's forum state, *Chang*, 2009 WL 111570, at *3, neither should it deny specific jurisdiction over a defendant who purposefully directed his allegedly tortious conduct at a forum resident and knew or should have known that its effects would be felt in the forum state. *See Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 506 (D.N.J. 2017) (rejecting, in a Computer Fraud and Abuse case, the defendant's argument that their conduct targeted California because the plaintiff's emails were stored on servers there, and concluding that "because Defendants deliberately targeted a New Jersey resident—who Defendants knew was in New Jersey when they targeted him—with tortious conduct, Defendants should have reasonably anticipated being haled to court in New Jersey.").

Because BidPrime has established minimum contacts between Rubenstein and Texas, the burden of proof shifts to Rubenstein to show that the assertion of jurisdiction is unfair and unreasonable. *Sangha*, 882 F.3d at 102. In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: "(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Id.* (citing *Burger King*, 471 U.S. at 477). The defendant must make a "compelling case . . . . It is rare to say the assertion is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (cleaned up). Even when litigation in the forum would "place a burden on the defendant," the interests of the forum and the plaintiff "justify even large burdens on the defendant" once minimum contacts are established. *Id.*

Rubenstein argues that defending a suit in Texas would be burdensome and inconvenient because he lives 1,300 miles away from Austin in Boca Raton, Florida, and all of his records related

6

to this action are in Florida. (Mot. Dismiss, Dkt. 38, at 19–20). This interest is insufficient to show that jurisdiction is unfair and unreasonable. *See Wien Air Alaska*, 195 F.3d at 216 ("At most [the defendant] demonstrates an inconvenience which would be equally felt by forcing the plaintiff to litigate in Germany."). "Texas has an interest in protecting its residents' property rights and providing a convenient forum for its residents to resolve their disputes." *McFadin*, 587 F.3d at 763. BidPrime has an interest in securing relief quickly, efficiently, and conveniently. *See id.* BidPrime's evidence and witnesses are in Texas. (Resp. Mot. Dismiss, Dkt. 44, at 17). The Court finds "no overwhelming burden to the defendant that outweighs the legitimate interests of the plaintiff and the forum state." *Wien Air Alaska*, 195 F.3d at 216.[2]

## B. *Fiduciary Shield*

Rubenstein also argues that the fiduciary shield doctrine insulates him from individual liability because BidPrime's complaint only alleges that he acted in his official capacity. (Mot. Dismiss, Dkt. 38, at 11–12). BidPrime responds that the fiduciary shield doctrine does not apply when the officer is sued in his personal capacity or when a corporate officer commits an intentional tort while acting on behalf of the corporation. (Resp. Mot. Dismiss, Dkt. 44, at 10–11). Rubenstein agrees that the doctrine does not shield him from being subject to specific personal jurisdiction for intentional tort claims. (Reply Mot. Dismiss, Dkt. 46, at 3 n.2). Having agreed that the fiduciary shield doctrine applies to BidPrime's intentional tort claims, the parties dispute only whether the doctrine applies to BidPrime's sole remaining claim for breach of contract. (*Id.* at 3–4).

The Court need not resolve that dispute. Assuming *arguendo* that the doctrine does apply to BidPrime's breach of contract claim, it only "prohibits a court from exercising personal jurisdiction" over Rubenstein. *Fairchild v. Barot*, 946 F. Supp. 2d 573, 581 (N.D. Tex. 2013) (citing *Stuart v.*

---

[2] Rubenstein also argues that it would be unfair to require him to defend this action in Texas because he lacks minimum contacts with Texas. (Mot. Dismiss, Dkt. 38, at 19). This argument misunderstands the burden-shifting analysis. Courts only look at whether jurisdiction would be fair to a defendant if it has already found minimum contacts, *Sangha*, 882 F.3d at 102, as this Court has here.

7

*Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985)). Because the Court possesses personal jurisdiction over Rubenstein for BidPrime's intentional tort claims, it can exercise pendent personal jurisdiction over another claim that arises out of the same nucleus of operative facts, even though it lacks an independent basis for personal jurisdiction over that claim. *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008). BidPrime alleges that Rubenstein breached BidPrime.com's terms of service by registering for accounts under fake identities and customer accounts. (Am. Compl., Dkt. 34, at 41–43). This claim arises out of the same nucleus of operative facts as BidPrime's intentional tort claims against Rubenstein, which likewise arise out of his alleged attempts to access BidPrime.com without authorization and obtain data. The Court can therefore exercise pendent personal jurisdiction over Rubenstein for the breach of contract claim even if the fiduciary shield doctrine would otherwise deprive the Court of an independent basis for personal jurisdiction over that claim.

### III. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Defendant Jeffrey Rubenstein's ("Rubenstein") Motion to Dismiss, (Dkt. 38), is **DENIED**.

**SIGNED** on October 22, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

8